By the Court,

Nelson, Ch. J.
Many of the important questions presented in this case arose on the deed of Smith, under whom the present defendant holds, in the case o Goodell v. Jackson, deciued in the court for the correction of *302 errors in 1823 (2, Johns. R. 693). Military lots No. 33 and 93 in the township of Junius, were conveyed, or rather attempted to be conveyed by that deed, by W. Sagorahasee, the son and sole heir of the patentee. In that case, Smith, the lessor, brought the action to recover possession of No. 33, and failed; the present action is brought by the heirs of a subsequent purchaser from the same grantor, for the recovery of a part of lot No..93; under a deed in form, properly proved and allowed by the surveyor-general, under the acts of 1809 and TO; and the defendant deduces his title to the premises from Smith by way of defence. So far then, as respects the legal operation and effect of the deed to Smith from the Indian heir, the case of Goodell v. Jackson is in point, and affords the highest authority for our guide. The case was most elaborately and learnedly examined by Chancellor Kent, and his conclusions were unanimously concurred in by the court. One of the principal questions involved, and which received a full share of his consideration, was, whether Peter Smith was authorized to purchase from William, the heir, in the year 1797; and the conclusion at which he arrived is succinctly stated at the close of the opinion, as follows: “By the constitution and statute law of this state, no white person can purchase any right or title to land, from any one or more Indians, either individually or collectively, without the authority and consent of the legislature; and none such existed when the [537] land in question was purchased by Peter Smith in 1797.” This result was derived from an exposition of the 28th section of the constitution of 1777, and the act of the legislature passed in 1788. The force and authority of this decision is now sought to be impugned by the application of the 3d subdivision of the 8th section of the first article of the constitution of the United States, which provides that congress shall have power “to regulate commerce with foreign nations, and among the several states, and with the Indian tribes,” and also the several acts subsequently passed by congress upon that subject (Laws of the U.S. v. 2, p. 221, § 4 ;p. 362, § 8;p. 542, §12; 3 vol. p. 288, § 12;p. 463, § 12). The provision in the state constitution of 1777, and in the act of 1788, and in the subsequent acts, had frequently been under the consideration of this court (7 Johns. R. 290, (1810); 9 id. 362. (1812); 14 id. 181, 472, (1817), previous to the discussion here and in the court for the correction of errors of the case of Goodell v. Jackson', and in none of the cases had it occurred to the counsel or the court, that this clause of the constitution of the United States, or that the acts of congress in pursuance thereof, had any bearing upon the question, or could in any way affect the authority of the state laws. The position of the learned counsel now is, that upon the adoption of the constitution of the United States, this state, by the operation of the clause in the constitution above referred to, surrendered to the general government the power to regulate the sale of Indian lands, and that thereby the 28th section of the state constitution became virtually abrogated, and that the act of 1788 and all subsequent acts upon this subject were passed without authority, and were void; and, as a necessary consequence, that neither the plaintiffs or the defendant have shown any lawful or valid title to the lot; both purchases from the Indian under which the respective parties claim title having been made in violation of the laws of congress.
The court and counsel must have considered this provision of the U. S. constitution as not applicable to purchases from individual Indians, at least in respect to the bounty lands granted by the state; and, indeed, [538] there is some difficulty in perceiving how the clause can be construed as applying to the disposition of Indian lands, either individually or by tribes. It would seem to be carrying the power simply “to regulate commerce with the Indian tribes,” to an extent beyond the legitimate and common meaning of the terms themselves, or in the connection in which they are *303 used. It is not important, however, to discuss this question, as it must have been the received understanding of all heretofore, that the provision in the constitution of the U. S. could not be applied to the case of individual sales, or at all events not to sales of the bounty lands granted to individual Indians by the state; and that it should be confined to lands held in common by the tribes.
But it is contended that the deed to Gillet of the date of 26th May, 1809, which was approved by the surveyor-general on the 26th April, 1810, agreeably to the acts of 1809 and 1810 (see Private Laws 1809, p. 62, and the act of 1810, 2 R. L. 172, § 46), shows a title out of the person under whom the plaintiffs claim title, and must therefore defeat the action. The deed to Gillet was the oldest, but the approval by the surveyor-general took place subsequent to the execution of the deed to Murray and Mumford, and subsequent also to the approval of the same by the surveyor-general. Since the act of 1801 (1 vol. W. & S. ed. 464), all the cases agree, that the deed of the Indian conveys no title to the purchaser (see 15 Johns, R. 264, in -addition to cases before referred to); and it seems necessarily to follow, that until the terms upon which the authority to convey (to be found in the acts of 1809 and 1810) are complied with, no title passed. It is however contended, that the approval on the 26th April related bade to the date of the deed, and thereby overreached the deed to Murray and Mumford. The difficulty in the way of that position is, that previous to the act of 1S09, no ability whatever to convey existed; and then the power given was clogged with certain conditions, without the observance of which no power still existed; and it would be absurd to give effect by relation back to a time when neither the grantors nor purchaser had brought themselves within the power conferred. The case is analogous to the deed of a. feme covert which [539] takes effect only from the time of the acknowledgment under the statute, and not by relation to its date (16 Johns. R. 110); and in this respect the case is also distinguishable from the enrolment of a bargain and sale, which, if done within six months, relates back to the delivery and avoids all mesne conveyances and incumbrances; and even on this question a good deal of difficulty and conflict of opinion existed among the judges, before this construction of the 27 Hen. 8, c. 18, became settled (Cro. Jac. 52; Cro. Car. 217; Cro. Jac. 408). Although this distinct point was not under the consideration of the judge, in the examination of the case of Jackson v. Hill (5 Wendell. 532), his individual opinion was in coincidence with the one above expressed. There the deed to G. was given 29th May, 1809, and approved 26th April, 1810, and the question was. whether the approval must be simultaneous with the execution of the conveyance. The court decided that it was not. necessary, and that the deed was good from the time of the approval.
It was proved that the agent of Murray & Mumford knew of the deed to Gillet at the time he made the purchase and obtained the deed from the Indian; and it is therefore contended that the deed to Murray & Mumford was fraudulent and void; the answer to which is, that if our view above be correct, in respect to the inability of the Indian to convey, except according to the terms of the acts of 1809, and 1810, then in judgment of law, no deed to Gillet existed at the time of the execution of the deed to Murray & Mumford.
The form of the approval of the deed to Murray & Mumford was in full compliance with the statutes. Whether the consideration paid was sufficient or not, was left entirely to the discretion of the surveyor general. A simple approval is sufficient (15 Johns. R. 264). Even if that officer erred in supposing that there was some doubt about the title of the grantor, and therefore was too readily satisfied with the amount of the consideration, the error can not affect the validity of his certificate, which is good in point of form. *304 Until vacated by a direct proceeding, it gives effect to the conveyance.
The judgment in partition, by which the interest of John B. Murray deceased, in the lot was set off to the plaintiffs jointly who recovered under the direction of the judge, and who are the heirs at law of .the deceased, is unexceptionable, and sustained the first count (2 Wendell, 443).
New trial denied.