By the Court, Bronson, J.
The children of Captain John Otaawighton, the patentee, so far as the fact of their being Indians is concerned, were capable of taking by descent, and, with the approbation of the surveyor general, of aliening the lands which had been granted to their father. (Private Laws of 1809, p. 62. 6 Web. 7, ch. 25, act of 2d March, 1810. 1 R. S. 720, § 13.) There can be no doubt, that the certificate of approbation endorsed by the surveyor general on the deed to Gillett, was a compliance with the acts of 1809 and 1810. (See Jackson v. Brown, 15 John. R. 264; Murray v. Wooden, 17 Wend. 531.)
There must, I think, have been some friistake in drawing up that part of the charge of the judge, in which he is made to say, that the deed to Gillett was good as to’ any of the grantors who were at the time married women; and that it was void as to such of the grantors as were infants / *125 for I hold the converse of both those propositions to be the law. The deed of an infant is voidable only—not void. (Bool v. Mix, 17 Wend. 119.) And as to the married women, they not only executed the deed without their husbands, but there was no such acknowledgment as the statute required for passing the estate of a feme covert. (1 K. & R. 478, § 2.) Without an acknowledgment on a private examination, &c. the deed was a mere nullity. ■
We are referred to the act of 1809, which declares,, that the deed of certain Indian heirs shall be valid, if executed with the approbation of the surveyor general. (Private Laws of 1809, p. 62. 1 R. S. 720, § 13.) But the object of that act was to give Indians, in certain cases, the same capacity to take, hold and convey lands, as though they were “ citizens, of this state.” It was not designed to remove any other disability • and as to the questions of infancy and coverture, the deed can have no other effect than though it had been executed by per- ■ sons who were not Indians. . As to the infant grantors, the deed is voidable onlv—not void; as to the married women, it is a nullity.
The plaintiffs, therefore, made out a title in Gillett to either four or five sixths of the property, according as it shall turn out that both or only one of the daughters of Captain John were married at the time the deed to Gillett Was 'executed.
There can be no doubt, upon the evidence, that Gillett assigned this and his other property at the time he was discharged as an insolvent debtor in 1812. His counsel contend, however, that the insolvent law of 1811 was unconstitutional and void, and that the assignment was consequently inoperative. But the act of 1811 has never been held to be wholly void. ■ On the contrary, it has been held valid as to a large, and probably much the largest class of creditors who were affected by it. For aUght that appears, the discharge was valid as to all the creditors of Gillett; but if it was good as to any of them, it does not lie in his mouth to say the assignment was inoperative.
The assignment was evidently made to Jacacks, Mandéll *126 and Norton, the persons designated by the recorder; and, not to Goodwin, as a Substitute for Jacacks. But there was evidence, from which the jury might, perhaps, have found, had the question been submitted to them, that an order, substituting Goodwin in the place of Jacacks, was made by the recorder soon after the discharge was granted.' As this was after an assignment had been made to, and accepted by Jacacks, and the other persons originally named by the recorder, the circuit judge was of opinion that the officer had exceeded his powers, and that the order appointing Goodwin was void. In that decision I think he eired. The first section of the insolvent act of 1811 provides, that the officer, if satisfied, &c. shall direct a grant or assignment of the petitioner’s estate to three persons, to be named by the officer^ . (6 Wéb¡ 200.) The second section provides, “ that in case of the refusal to serve, death, ah-' sence, or incapacity, by reason of sickness, or othewise, of any person so named as assignee, the said recorder or commissioner shall and may appoint another in his stead; and so, from time to time, as often as any vacancy shall happen from any of the causes before mentioned, such vacancy being sufficiently suggested and made to appear to such recorder ór commissioner.” The language of this section, especially the last clause of it, is very broad, and it seems difficult to deny that the legislature intended to provide for vacancies happening after, as well as before an assignment had been executed. In Van Valkenburgh v. Elmehdorf, (13 John. R. 314,) ho doubt seems to have been entertained, that the commissioner had power to supply a vacancy happening after an assignment had been executed.
If an order Was in fact made, substituting GoOdWin in the place Of Jacacks, it may then become 'material to inquiie. Whether the deed frtim Mandell and Goodwin, as assignees of Gillett, to Justus Wright, was duly acknowledged and proved under the act of 1813. (1 R. L. 369, § 1.) The deed Was acknowledged by Mandell, and as to him the certificate of the commissioner is sufficient. But as to Goodwin, the deed was not well proved. Although, from *127 the record produced, the deed purported to be witnessed by Thaddeus Dann and another person, it does not appear that the Thaddeus Dann, who appeared before the commissioner, was a subscribing witness to the deed. That fact was neither stated by Lewis, who identified Dann, nor did Dann himself say that he was a subscribing witness to the deed. Again: although D.ann testified before the commissioners, “ that the said Goodwin duly executed the Avithin deed,” it does not appear how he .arrived at the knoAvledge of that fact. The witness neither states that he saw the deed executed, nor that Goodwin acknowledged to him the execution of the deed. (See Jackson v. Phillips, 9 Cowen, 100, 112.) (a)
If Goodwin was not substituted in the place of Jacacks, or if he Avas so substituted, and it cannot be duly proved that he, as well as Mandell, executed the deed to Wright, then the title to the land still remains in the assignees of Gillett; for the deed of Mandell alone, Avho was one of several assignees, could not have the effect of conveying any interest in the land. The deed should have been executed by a majority of the assignees. (6 Web. 207, § 17.)
Gillett, as we have already seep, only acquired the title of four or five of the six heirs of the patentee; aiid one or two of the heirs are tenants in common with Gillett’s assignees. But it is impossible to maintain, that the defendant, without showing any connection whatever with the title, is to be deemed in possession under those heirs as a tenant in common Avith the assignees, and so making it necessary for the plaintiffs to show an actual ouster. In the absence of all proof on the subject, there is just as much ground for saying that the defendant holds under the assignees, as there is for sayipg he holds under the heirs of Captain John, who yet own one or two sixths of the property. So far as appears, the defendant is a mere trespasser, having no connection whatever with the title. Before *128 he can call on the plaintiffs to prove that they have been ousted, he must show that he is himself a tenant in common with them, or that he is in possession under some person holding that relation to the plaintiffs. Although the defendant was a trespasser, yet, as he did not enter or hold under the plaintiffs, he was undoubtedly at liberty to show a title out of them in a third person ;(a) but that is a very different thing from putting the plaintiffs to prove an actual ouster.
As the case stood at the circuit, the assignees were entitled to recover all but one or two sixths of the property, and a new trial must be granted. But there is a question upon the pleadings. There can be no recovery under the first count, because it lays a title in Gillett and his assignees. The title is either in one or the other, and not in both. Where a joint title in several persons is alleged, it is not enough to prove a title in some of them. (Doe v. Butler, 3 Wend. 149.) The second count must also fail, because it sets up a title in Gillett, after that title had passed to his assignees. The third count lays the title in “ Isaac Norton, one of the surviving assignees of Gillettand the fourth count is in the same form, but on the title of Jacacks. If there were two surviving assignees at the time the suit was brought, the title was in them jointly; and it should have been so laid, instead of alleging a several title in each.
Aside from the question of substitution, Jacacks and Norton were the surviving assignees of Gillett, at the time the suit was brought, in January, 1837. Mandell died in 1828. The pleader was right in making Jacacks and Norton parties, as surviving assignees; but he made a mistake in joining them with Gillett in the first count, and in separating them from each other in the third and fourth counts. If, as the defendant alleges, Goodwin was duly substituted in the place of Jacacks, the assignees were then, Mandell Goodwin and Norton. Mandell died- in 1828, and Good *129 win in 1829 or 1830—both, before the action was commenced —and Norton was, therefore, sole surviving assignee, hi this view of the case, the third count was properly framed, except that it called Norton one of the surviving assignees, instead of the surviving assignee of Gillett. This trifling misdescription might well have been disregarded at the circuit, and would have been cured by a subsequent amendment. But there is a further, difficulty. The declaration is for the whole interest, while the proof shows the plaintiffs only entitled to an undivided share in the premises. (2 R. S. 304, § 9. Holmes v. Seely, 17 Wend. 75.)
If this cause goes to another trial, the plaintiffs, in order to meet the proof in all its aspects, should retain the count alleging a title in Gillett; the first .count should be amended, so as to allege a title in Jacacks and Norton, (Jacacks having been alive at the time the suit was commenced,) as surviving assignees ; and the third count should he amended, so as to state a title in Norton as surviving assignee. The fourth count is useless, in every view of the case. Counts should then be added so as to meet the proof in relation to undivided shares, instead of the entirety of interest.
The plaintiffs are at liberty to amend; and there must be a new trial—the costs to abide the event.
Ordered accordingly.

 See also Norman v. Wells, (17 Wend. 136, 142, 3;) Munns v. Dupont, (3 Wash. C. C. Rep. 32, 42;) Kingwood v. Bethlehem, (1 Green’s Rep. 228.)

 See Swart and others v. Service, (21 Wend. 36 ;) also, Bloom v. Burdick, (infra, 138.)