## Case No. 16,212.

UNITED STATES v. SA–COO–DA–COT et al.

[1 Abb. U. S. 377;[1] 1 Dill. 271; 3 Am. Law T. Rep. U. S. Cts. 113.]

Circuit Court, D. Nebraska. May Term, 1870.

INDIANS — CRIMINAL JURISDICTION OF NATIONAL COURTS.

1. Indians, though belonging to a tribe which maintains the tribal organization, but occupying a reservation within the limits of a state, if there is no valid statute of congress or treaty to the contrary, are amenable to state laws for murder or other offenses against such laws committed by them off the reservation and within the limits of the state.

[Cited in State v. Doxtater, 47 Wis. 281, 2 N. W. 439.]

2. Query—whether the United States courts have jurisdiction, under such circumstances, of offenses committed by Indians upon the reservation?

3. The court in a capital case against Indians, though neither party asked it, and both demanded judgment, arrested judgment, on its own motion, for want of jurisdiction over the offense charged in the indictment; but, instead of at once ordering the discharge of the Indians, the court made a special order for turning them over to the state authorities.

4. The relations which Indians, residing within state limits, sustain to the state and the United States, and their respective laws, discussed, by Dillon, Circuit Judge.

[The defendants, four in number, and Indians, have been indicted in this court, charged with and convicted of the murder of one Edward McMurty, a white inhabitant of the state of Nebraska. They were tried before Mr. District Judge Dundy, sitting alone in this court, upon their plea of "Not guilty." Prior to the verdict, neither by demurrer, motion, plea, or otherwise, did the defendants make any objection to the jurisdiction of the court. After a verdict of guilty they made a motion for a new trial, and another in arrest of judgment. By the latter motion the question as to the jurisdiction of the court was for the first time presented. These motions were argued and submitted at the last regular term of the court, but before any decision thereof was made, the defendants asked, and the court

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

granted leave, to withdraw them. This was at the adjourned February term, 1870. Whereupon the district attorney, in behalf of the United States, moved for judgment upon the verdict. This motion is not resisted by the defendants, or the counsel who represents them.] [2]

Mr. Strickland, Dist. Atty., and Mr. Baldwin, for the motion.

Mr. Chase, for defendants.

Before DILLON, Circuit Judge, and DUNDY, District Judge.

DILLON, Circuit Judge. The present attitude of this case is not a little singular. The one party asks, and the other party, acting under the advice of skillful counsel, does not resist a judgment which is the highest human laws or a human tribunal can inflict. It is the court alone which hesitates and deliberates.

In explanation of the course which the counsel for the defendants have taken in withdrawing all questions as to the jurisdiction of the court, a reason has been given, which, for the honor of the people of the state, it is hoped can have no real foundation, viz.: that such is the strength of the tide of local feeling and prejudice against them and their Nation, that they prefer to take a sentence of death and trust to executive interposition, than to run the risk of illegal violence, if discharged from this court, or turned over to the authorities of the state. The court gladly avails itself of this occasion to express its conviction that fears of this character are groundless.

As the defendants have been duly indicted and convicted, it is the duty of the court to pass judgment against them, if it has jurisdiction of the crime charged in the indictment. Whether it has jurisdiction is the only question remaining to be decided. Notwithstanding the withdrawal of the motion in arrest. it is still the duty of the court, before pronouncing the sentence of death, to be satisfied that it has cognizance of the offense which it is proceeding to punish. No act that a court can be called on to perform is more grave and solemn than to render a capital judgment. To the performance of such a duty. a judge is only reconciled by the consideration that it is not he who does it, but the law, of which he is simply the minister. But if the law invests him in the particular case with no such power, he may well deliberate, and must refuse to exercise it. If the court has no jurisdiction, therefore, it is its duty, on its own motion, to stay judgment, although this question may not be made, or may be waived by counsel.

With these preliminary considerations, which seemed proper to be stated, we proceed to examine the question whether the courts of the United States have jurisdiction

[2] [From 1 Dill. 271.]

of the offense for which the defendants have been convicted.

The only allegations in the indictment made with a view to show the jurisdiction of the court are the following: "That the defendants are Indians belonging to the Pawnee tribe, which tribe are, and were, in charge of a United States Indian agent duly appointed by the United States, and were, and are, living upon an Indian reservation, known as the 'Pawnee Reservation,' within the state of Nebraska; that said defendants crossed the boundary line of said Indian reservation and entered into the county of Polk, in the state of Nebraska aforesaid, and then and there unlawfully," &c., did kill and murder by shooting, as particularly described in the indictment, one Edward McMurty, a white inhabitant of the said state. Thus, it appears from the express averments of the indictment, that the place where the offense was committed was within the body of the county of Polk, in the state of Nebraska, and not within the limits of the Indian reservation. The proof, in this respect, corresponds with the allegations. The offense is alleged, and was shown to have been committed on May 8, 1869, which was after Nebraska had been admitted into the Union, and her organization as a state was fully perfected and in operation. The question is, whether the offense thus committed is one of which the courts of the United States have cognizance, or whether it is alone cognizable by the courts of the state of Nebraska. Within the territorial limits of the state just named is a body of people known as the Pawnee tribe of Indians, to which the defendants belong. This region has for many years been their home; but their occupancy is now restricted to a "reservation" of limited extent. Here they reside in a body, maintaining their tribal organization, under the superintendency of agents appointed by the government of the United States. They are already in the midst of a white population, but do not enjoy any of the political, nor many of the civil rights of the latter. They do not vote, are not taxed, and under the decision of the supreme court of the United States their property is not taxable by the state authorities. The ordinary state laws relating to taxation, schools, marriage, divorce, administration of estates, and the like, are not extended to, observed by, or enforced among them. As respects all their internal concerns, they are governed and regulated by the laws and customs of the tribe.

The inquiry is neither uninteresting nor unimportant, as to which, whether the general government or the state, has legislative control over this people; and if both, whether the power is concurrent, and if not, where is the boundary line, marking where the control of the one ends, and where that of the other begins. This inquiry it is our duty to answer, so far as the record in this case requires it. It is necessary to examine into

the acts of congress, relating to offenses committed by Indians, into the treaty stipulations of the United States with the Pawnees, and into the acts of congress respecting the powers and jurisdictions of the state of Nebraska. Nebraska was organized into a territory by the act of May 30, 1854 [10 Stat. 277], and by that act (sections 4, 37) the rights of Indians therein are preserved unimpaired, and the authority of the United States to make regulations respecting them, their property and other rights, by treaty, law, or otherwise, retained. The Pawnee tribe then, as now, resided within the limits of the territory thus created. On September 24, 1857, the Pawnees ceded by treaty of that date their lands in the territory of Nebraska to the United States, reserving, however, "out of this cession a tract of country thirty miles long from east to west, and fifteen miles wide from north to south." 11 Stat. 729. This is the reservation described in this indictment. The treaty provides that United States agents may reside on the reservation; that the government may build forts thereon; that the whites may open roads through it, but shall not reside thereon; that the Indians shall not alienate the lands, except to the United States; that all the offenders against the laws of the United States shall be delivered up, &c.; but it contains no stipulation as to the jurisdiction over it, or over the Indians residing thereon, when the territory shall be admitted as a state. On April 19, 1864 [13 Stat. 47], congress passed an act to enable the people of Nebraska to form a state constitution; in 1866 a state constitution was formed, and in 1867 [14 Stat. 391] congress passed an act for the admission of Nebraska, under its constitution, into the Union, "upon an equal footing with the original states, in all respects whatsoever."

There is no exception in the state constitution, or in either of these acts of congress, of the Pawnee reservation or the Pawnee Indians, from the territorial or civil jurisdiction of the state. So that we have before us the case of Indians maintaining the tribal organization, which is recognized in the treaty by the general government, but living upon a reservation which is now within the limits of the state, and respecting which, or the Indians occupying it, there are no special provisions granting or retaining jurisdiction in favor of the United States, or withdrawing the Indians from the jurisdiction of the state.

It will be observed that the present indictment is not for an offense committed by Indians against an inhabitant of the state upon the reservation, and hence we have no occasion to inquire whether for such offenses the courts of the United States or those of the state of Nebraska have jurisdiction; nor whether it would be competent for congress in such a case (the absence of any cession of jurisdiction by the state) to invest the national courts with cognizance thereof. See, on this point,

U. S. v. Bailey [Case No. 14,495], and the case therein referred to against two Indians for the murder of Davis in the Cherokee country, within the limits of a state; U. S. v. Cisna [Id. 14,795]; U. S. v. Ward [Id. 16,639], opinion of Mr. Justice Miller; U. S. v. Stahl [Id. 16,373], opinion of Miller, J.; U. S. v. Rogers, 4 How. [45 U. S.] 567; U. S. v. Holliday, 3 Wall. [70 U. S.] 407. Compare Kansas Indians, 5 Wall. [72 U. S.] 737, and remarks of Davis, J., arguendo, page 755; New York Indians, Id. 761; Worcester v. Georgia, 6 Pet. [31 U. S.] 616; New York v. Dibble, 21 How. [62 U. S.] 366. As to state authority over Indians, see, also, Goodell v. Jackson, 20 Johns. 693, and constitutional provisions and act of April 12, 1822 (2 Rev. St. 881), there cited; Murray v. Wooden, 17 Wend. 531; Swan's St. Ohio 304; Rev. St. Mass. 148; Clay v. State, 4 Kan. 49; People v. Antonio, 27 Cal. 404; Hicks v. Ewhartonah, 21 Ark. 106; Id. 485; Peters' Case, 2 Johns. Cas. 344; [McCracken v. Todd, 1 Kan. 148].[8]

It will appear from these authorities and citations that New York, Ohio and other states have, at different times passed acts declaring that the civil and criminal jurisdiction of these states extended to Indians and to Indian reservations; and that such legislation has been considered valid when not in conflict with some treaty or constitutional act of congress. The locality or place where the homicide now in question is alleged to have been committed, is confessedly within the territorial limits of the state, and the deceased was an inhabitant of, or found within the state. It is settled that there are no common law offenses cognizable by the courts of the United States; that before these courts can take cognizance of an offense, it must be declared such by an act of congress; and that it is not competent for congress to enact a criminal code punishing offenses generally, but those only which relate to the general government, or which are committed by or upon citizens or inhabitants of the United States, upon the high seas, or within the national domain beyond the limits of any state, or in places over which congress has exclusive jurisdiction. The offense charged in the indictment is murder; and we now inquire whether there is any act of congress which confers, or undertakes to confer jurisdiction upon the national courts of a homicide committed under the circumstances of the one under consideration?

There are two statutes relating to murder, cognizable by the United States courts,—the statute of 1790 [1 Stat. 112] and that of 1825 [4 Stat. 115]. The former act provides that if any person shall "within any fort, arsenal, dockyard, magazine, or in any other place or district of country under the sole and exclusive jurisdiction of the United States," commit the crime of willful murder, &c., he shall be punished, &c. The latter act declares

---

[8] [From 1 Dill. 271.]

"that if any person upon the high seas or any river, &c., within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of any particular state," shall commit willful murder, &c., he shall suffer death. It is scarcely necessary to remark that the case at bar falls within none of the provisions of either of these statutes. These do not undertake to punish murder generally, but only when committed on water out of the jurisdiction of any state, or upon land when committed at a place within the exclusive jurisdiction of the United States. If other provisions do not exist, it is evident that the court had no cognizance of the case made in the indictment.

We have been referred to the intercourse act of 1802 (2 Stat. 137, 143, §§ 14, 15), by which congress defined the "Indian country," and provided for the punishment by the United States courts of Indians who left the Indian country, and committed offenses in any state or territory. It must have escaped the attention of counsel, that this act, so far as it relates to Indian tribes west of the Mississippi, was repealed as long ago as June 30, 1834. 4 Stat. 729, § 29. As it will not be maintained that a prosecution can be supported under a repealed statute, we need give it no further attention.

The jurisdiction of the court is also sought to be sustained under the act of June 30, 1834, just cited. By section 1 of that statute it is enacted "that all that part of the United States west of the Mississippi, and not within the states of Missouri and Louisiana, or the territory of Arkansas, shall be taken and deemed to be the Indian country." By a subsequent section, this Indian country is annexed, part to the judicial district of Arkansas, and the rest to the judicial district of Missouri. Section 25 is in these words: "So much of the laws of the United States as provide for the punishment of crimes committed within any place within the sole and exclusive jurisdiction of the United States shall be in force in the Indian country: provided, that the same shall not extend to crimes committed by one Indian against the person or property of another Indian." At the time this statute was enacted it applied to the locality where the offense in question was committed; but it ceased to be operative within the limits of Nebraska the moment when the latter was admitted into the Union as a state, upon an equal footing with the original states. This is the precise point decided by Mr. Justice Miller in United States v. Ward, supra, and it is quite unnecessary to enlarge upon it, or repeat the reasons by which the conclusion is supported. That was an indictment of a white man for the murder of a white man, committed on an Indian reservation, within the state of Kansas, and it was held that the national courts had no jurisdiction, and the opinion expressed that the state-courts had.

In U. S. v. Bailey [Case No. 14,495] a case is referred to in the Tennessee district, where, in 1816, two Indians were indicted in the United States circuit court for the murder of a white man, on a reservation, in the Cherokee country, within the limits of the state, and it was decided that the United States court had no jurisdiction; and this decision in the Tennessee case, was the occasion of the passage of the act of 1817 (3 Stat. 383), which (after the decision of the Bailey Case) was repealed (4 Stat. 729, 734), whereby congress provided for the punishment in the national courts of offenses committed by Indians or others, upon Indian lands, within state limits. This decision referred to would preclude this court from taking jurisdiction in the case at bar, had the homicide been committed by the defendants within the limits of the reservation; but, as before remarked, the court has no occasion to give any opinion on this point. But if it could not take cognizance of offenses committed upon the reservation, it surely cannot of those committed beyond its limits. And it seems impossible to hold that this court has jurisdiction in this case without necessarily implying that the courts of the state have not; and if they have not, then we decide that the state of Nebraska has not the power to make her ordinary criminal statutes coextensive with the state limits, and enforce them against all persons living or found therein. Such a power we are not prepared to deny to the state, in the absence of some conflicting treaty stipulation or valid act of congress.

No statutes, other than those above noticed, have been referred to by counsel, as giving the court jurisdiction in the present case, and these we hold do not confer it. This conclusion is supported by many of the cases before cited, and is opposed to none of them. Of its correctness the court entertains no doubt. In view of the peculiar relations which the general government sustains to the Indian tribes, I think I ought to observe that I am not at present prepared to yield assent to the opinion which Mr. Justice McLean seems to have entertained in Bailey's Case, that congress had no power to pass the act of 1817 (3 Stat. 383); that is, congress could not, if it saw fit, make punishable in the national courts offenses committed by or against Indians upon reservations in state limits. And it might be worth the consideration of congress whether some such legislation would not be expedient.

But if it be conceded that under the power of peace and war, to make treaties, and to regulate commerce with Indian tribes (Worcester v. Georgia, 6 Pet. [31 U. S.] 515), congress could, in the absence of reserved right to do so, withdraw Indians living within the limits of a state entirely from state jurisdiction and the reach of its criminal laws and process for offenses against its citizens committed off a reservation, it would seem most improbable that such a power

would ever be exercised. We have seen that, in point of fact, congress has not undertaken to exercise it, and therefore this court, which can take cognizance only of offenses created by some act of congress, has no jurisdiction of the crime charged in the indictment. 。

The defendants must be discharged.

Under the circumstances of the case, the defendants having been convicted and entitled to be discharged only for want of jurisdiction, and following the course pursued in a similar case (U. S. v. Cisna [Case No. 14,-795]), we deem it our duty to enter the following special order:

Ordered, that the district-attorney of the United States notify, without delay, the governor of this state, or the proper district-attorney, of this order: that the marshal retain the custody of the defendants, and safely keep them for the space of twenty days, within which time he will deliver them over to any authorized officer of the state, producing a writ for their arrest. If no such writ is presented within the time limited, he will discharge them from custody, or if they desire it, place them in the charge of the United States Indian agent or superintendent for the tribe to which they belong.

NOTE [from 1 Dill. 271]. Jurisdiction of federal courts over Indians within state limits: Cited, Karrahoo v. Adams [Case No. 7,614]; U. S. v. Bridleman, 7 Fed. 897; U. S. v. Martin, 14 Fed. 823; Ex parte Sloan [Case No. 12,-944]; Danzell v. Webquish, 108 Mass. 134.