# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF THE STATE OF KANSAS,

#### DURING THE TERM COMMENCING JULY, 1866.

---

JOHN CLAY, Appellant, *v.* THE STATE OF KANSAS,
Appellee.

### *Criminal Appeal from Leavenworth County.*

The letter of art. 2, § 8, clause 17, of the Constitution of the U. S., does not
preclude the exercise of jurisdiction by the State of Kansas, over criminal
offenses committed on the military reservation at Fort Leavenworth,
because—

1. That reservation was not purchased with consent of the state legislature;
and
2. It was not purchased for the erection of forts, but as a part of the vast
Territory of Louisiana; and the state may exercise such jurisdiction.

Congress has not reserved its control over the military reservation at Fort
Leavenworth; the omission in the act of admission of Kansas, to take
guaranties against the action of the state in exercising such jurisdiction,
is conclusive. § 1, *Act of Admission;* 17 *Johns.*, 225; 3 *Wheat.*, 388; 8
*Mass.*, 75; 2 *Story's Const.*, § 1227.

A statement of the facts of the case may be found in
the subjoined opinion of the court.

*Hemingray & Fitzwilliam,* for appellant.

*Attorney General, Brumbaugh,* for the State.

*Hemingray & Fitzwilliam* submitted :

1. The question raised by the record in this case is, "Whether the courts of this state have cognizance of a larceny committed upon the military reservation of the United States known as Fort Leavenworth ?" The state claims that her jurisdiction over the reserve is 1. Exclusive ; or, 2. Concurrent. The appellant claims that it is not exclusive nor concurrent in the state, but is alone in the United States, in view of art. 1, § 8, Cons. U. S. ; art. 4, § 3, Cons. U. S.

2. The United States acquired this reserve by cession from the French Republic, under a treaty. (*Treaty, Comp. L.,* 32.) The United States, in 1827, through her authorized agents, selected Fort Leavenworth for a "permanent cantonment," and have continued, without interruption, to occupy and use it solely for military purposes, the title being in the general government. (7 *How.* 192, 3, 4 ; *United States* v. *Stone,* 2 *Wallace,* 525.) In 1854, Congress created the Territory of Kansas ; the fort grounds were within her territorial limits. (*Organic Act,* § 31, *Comp. L.,* 45.) In 1861, Kansas was admitted into the Union ; the fort was still included within her boundaries. (*Act of Admission.*) But in order to sustain the jurisdiction of this court in the case, it must be shown that the authority asserted by the state is protected by the act of admission, or some other act of Congress applicable thereto. 9 *Peters,* 234 ; 7 *Cranch,* 136.

3. Congress has legislated upon the crime stated in the information, and the place within which it was committed. (§ 4, 202 ; § 2, 203 ; *Brightly's Dig.*) And

this act of congress, making this crime an offense against the United States, is, by § 2, art. 6, Cons. United States, "the supreme law of the land, and the judges in every state shall be bound thereby." (*U. S.* v. *Hart,* 3 *Wheeler's Cr. Ca.,* 304.) "Crimes are only punishable by the government against which they are committed." (17 *Pick.,* 298 ; 14 *Johns.,* 338 ; 2 *Hill,* 169 ; *Story Confl. L.,* 516, 2*d* ed. ; 1 *Kent,* § 402 ; 17 *John. R.,* 4.) "Crimes against the government of the United States cannot be punished in the state courts ; for every criminal prosecution must charge the offense to have been committed against the sovereign whose courts sit in judgment against the offender." (*Teal* v. *Felton,* 1 *Comstock,* 546 ; *U. S.* v. *Lathrop,* 17 *Johns.,* 9 ; *Scoville* v. *Canfield,* 17 *Johns.,* 338.) Courts of the states cannot take cognizance of a penal case arising under an act of congress. (*Harvey* v. *Sharp,* 1 *Dana* 442.) State court has no jurisdiction of the crime of perjury, committed in a state court even, in a naturalization proceeding. (*People* v. *Sweetman,* 3 *Park C. R.,* 358.) So held in Indiana that the state courts, under a statute against perjury, have no jurisdiction of perjury committed in affidavit made under an act of congress relative to the sale of public lands. (*State* v. *Adams,* 4 *Blckf.,* 146.) A state court has no jurisdiction over the crime of stealing a letter from the mail, contrary to the act of congress of 1825. (*State* v. *McBride,* 1 *Rice,* 400.) After great consideration, it was decided that the "legislation of congress, if constitutional, must supersede all state legislation upon the subject, and by necessary implication, prohibit it." *Prigg* v. *Com. Penna.,* 16 *Peters,* 617–22.

4. Where congress has exercised its power on a given subject, the state power over the same subject, which

has before been concurrent, is by that exercise, absolutely prohibited. (*Houston* v. *Moore*, 5 *Wheat.*, 22–3.) "And the power of exclusive legislation is jurisdiction." (*U. S.* v. *Bevans*, 3 *Wheat.*, 388; *Sturgis* v. *Crowninshield*, 4 *Wheat.*, 122–193.) If the state courts had antecedent jurisdiction in the premises, they will retain it until congress exercises its constitutional power by act enabling the federal courts to entertain such jurisdiction; but, nevertheless, so soon as congress acts and the jurisdiction of the federal courts attaches, that of the state court is superseded. (3 *Wheat.*, 336; 5 *Wheat.*, 184; 4 *Peters's Cond. R.*, 279.) So here the constitution gives congress the power explicitly, to provide for the government of forts, magazines, &c., and this power is absolute and exclusive, and if there had been any antecedent jurisdiction of the state courts, that jurisdiction is by these authorities determined, now that congress has assigned jurisdiction of this crime to the federal courts. *No. XLIII, Federalist*, 199; *Bayard on Const.*, 80.

5. But the appellant claims that the United States did not purchase this military reservation from the state, nor was it ceded by the state. How could it be? It was ceded by a foreign power, and congress, by the constitution, was clothed with supreme authority relative to this territory. In fact, the very name military reservation, establishes the fact, that the supreme power, that is the nation, reserved, separated, retained, set it apart for national purposes. (1 *Kent*, 427, 8; 14 *Peters*, 537; 13 *Peters*, 436; 8 *How.*, 306; 7 *How.*, 192, 3, 4; 5 *Att'y Gen. Opinions*, 578; *ibid* 6, 156.) Nor could the state dispose of or cede this particular place (on which the fort was established anterior to the existence of the state) to the United States, because

the title or sovereignty never vested in the state, but has remained in the general government since the acquisition thereof. "Whensoever a tract of land shall have once been legally appropriated to any purpose, from that moment the land thus appropriated becomes severed from the mass of public lands; and no subsequent law, or proclamation, or sale, would be construed to embrace it, or to operate upon it, although no other reservations were made of it." (*Wilcox* v. *Jackson*, 13 *Peters*, 499.) It is a fundamental principle, that the rights of sovereignty are never taken away by implication. If the United States had the right to establish the military post in question, (and there can be no doubt on this proposition,) then she has the right of exclusive legislation over it. Wherefore, it follows that she has exclusive jurisdiction. (3 *Wheat.*, 388.) The power given to the general government to establish forts, magazines, &c., is from its nature, exclusive, and utterly repugnant to the exercise of a like power by the state, and it must follow that the power creating and maintaining such places has exclusive authority over the property or the person within such place. (1 *Bishop Cr. L.*, 22; 1 *Kent*, 478–9; *U. S.* v. *Cornell*, 2 *Mason*, 60; *U. S.* v. *Davis*, 5 *Mason*, 356; *Cohens* v. *Virginia*, 6 *Wheat.*, 426, 429.) It follows, as a consequence, from this doctrine of the federal courts, that state courts cannot take cognizance of any offense arising within such military district. *Com.* v. *Clary*, 8 *Mass.*, 72.

6. The control of the United States over their own property is independent of locality, and no state or territory can interfere with their control, enjoyment, or disposal of such property. (*Irvin* v. *Marshall*, 20 *How.*, 558; 1 *Kent*, 427.) The federal government has

not only the right of eminent domain, but the free and the prime right of disposition of the territory, all of which are attributes of sovereignty. The capacity of the federal government to acquire territory, either by purchase or treaty, is undisputed. (*People* v. *Folson*, 5 *Cal.*, 373.) Kansas was bound by the acts of the United States, done while the general government had plenary jurisdiction over the subject. 7 *How.*, 660; *U. S.* v. *Ames*, §§ 8, 9, 10, *U. S. Dig.*, 470.

The conclusion then is, that the territory designated as Fort Leavenworth, vested in the United States by cession, or treaty; that it was established for military purposes solely, by authority of the general government; that it has been used for that purpose before and since the admission of Kansas into the Union; that the conclusive right of the general government to legislate over it, or to punish offenders and offenses therein, has not been restricted; and that it is a "place" without the state of Kansas.

*By the Court,* BAILEY, J.

The appellant was charged by information filed in the criminal court of Leavenworth county, with larceny, and filed a plea to the jurisdiction of the court, setting up that the offense, if committed at all, was committed within the military reservation of Fort Leavenworth, within the exclusive jurisdiction of the United States. To this plea the prosecuting attorney for Leavenworth county (H. W. Ide, Esq.) demurred, and the court sustained the demurrer.

The appellant duly excepted to the ruling of the court, and, by leave, filed a plea of not guilty, where-

upon the defendant was tried by the jury, and convicted.

Motions in arrest of judgment, and for new trial, having been made and overruled, the appellant brings his case to this court upon the single question of jurisdiction.

An elaborate and able argument is made by the learned counsel for appellant, to prove that the jurisdiction of the military reservation at Fort Leavenworth vested in the United States exclusively, by virtue of the original cession of the territory from France, and its early and continuous occupation for military purposes, which argument is supplemented by the citation of numerous authorities, none of which, however, it is believed, cover or sanction the claim in support of which they are advocated.

A brief statement will, we apprehend, be sufficient to show that the claim made in behalf of the appellant cannot be sustained.

I. And, first, we remark that it is not sustained by the letter of the constitution of the United States. Article 1, section 8, clause 17, of the constitution of the United States, defining the legislative powers of the government, provides that congress shall have power to exercise exclusive legislation, in all cases whatsoever, over such district (not exceeding ten miles square) as may by cession of particular states and the acceptance of congress become the seat of government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock yards, and other needful buildings.

We say the letter of this provision does not sustain the claim of the appellant, because—

First. The military reservation at Fort Leavenworth was not purchased by the consent of the legislature of the State of Kansas, but long before the State of Kansas had an existence.

Second. It was not purchased for the erection of forts, but as a part of the vast territory of Louisiana. The argument of purchase proves too much.

II. If it should be said that the whole territory now constituting the state of Kansas was, prior to the organization and admission of the state, subject to the exclusive legislation of congress, and the jurisdiction of the United States courts, and that it was competent for congress to reserve its control over the tract in question, it is cheerfully granted ; but the reply is inevitable.   Congress has not seen fit to make any such reservation ; neither the organic act which gave existence to the new territory, nor the act admitting the new state into the Union, affords the slightest trace of any intent on the part of congress to make such a reservation.

On the contrary, while carefully excepting out of the limits of Kansas, the territory occupied by certain Indian tribes with whom treaties existed, providing that they should not be included within the limits of any state or territory, the act of admission, after defining the boundaries of the new state, so as to include the reservation in question, emphatically declares the State of Kansas to be one of the United States of America, and admitted into the Union on an equal footing with the original states, in all respects whatever.  *See* § 1, *Act of Admission.*

In section 3 of the same act, clause 6, careful pro-

vision is made against taxation by the state, of the lands of the United States; but not a word is said of any reservation of jurisdiction or legislative powers, in any portion of the territory comprised within the limits of the new state.

This omission to take guaranties against the action of the state, in a matter of so vast importance, must be deemed utterly irreconcilable with the hypothesis of the counsel for appellant.

III. If it be conceded, as we think it must be, that there is no express authority for the claim set up in behalf of the United States, to exclusive jurisdiction, it can hardly be pretended, we think, that the rights of a sovereign state, admitted to the Union before, on an equal footing with the original states in all respects whatever, can be taken away by implication. Such a proposition need only be stated. It needs no argument, yet it may not be superfluous to show that a case standing thus clear upon reason and principle, is not less strong upon authority.

In the case of The People *v.* Godfrey, 17 Johnson's R., 225, where the defendant was charged and tried for murder committed within the limits of Fort Niagara, while that fort was occupied by U. S. troops, the accused being a corporal of the guard, and the man he was charged with killing a fellow soldier in his custody within the walls of the garrison, at the time of the homicide, the court, SPENCER, C. J., held that the right of exclusive legislation or jurisdiction within the limits of any of the states, can be acquired by the United States only by purchase of territory from the states for the purpose, and in the mode prescribed in the constitution of the United States.

In relation to the claim set up in that case, as in the

one at bar, that the place in question had been occupied solely for military purposes, the learned judge remarked that the occupation of Fort Niagara by the troops of the United States, since its evacuation (by the British) in pursuance of the treaty of 1794, cannot be considered as evidence of a right in the general government to the post itself. It was a friendly occupation, not in derogation of our rights, &c.

The same doctrine is held by Chief Justice Marshall in the case of the United States *v.* Bevan, 3 Wheaton, 388 ; and by Chief Justice Parsons in Commonwealth *v.* Clay, 8 Mass. R., 75.

Finally, the same doctrine is authoritatively stated by Judge Story in his Commentaries on the Constitution, in the following decisive language. After stating that the state courts could not take cognizance of any offense committed within any places ceded to the United States, nor could the inhabitants of such ceded places claim any rights in the state as citizens, he says : " But, if there has been no cession by the state, of the place, although it has been constantly occupied and used, under purchase or otherwise, by the United States, for a fort, arsenal or other constitutional purpose, the state jurisdiction still remains complete and perfect." 2 *Story on Const.*, § 1227.

In the case before us there has been neither a cession by the state, nor its equivalent ; if there could be an equivalent, a reservation by the United States in the organic act or the act of admission, or elsewhere, the U. S. government, owning the soil, has reserved the same from sale and settlement out of the mass of the public lands, and has occupied it for military purposes, and will do so as long as it may be necessary. If the doctrines contended for by the appellant were

true, the State of Kansas, as well as several other frontier states, would be speckled and spotted all over, like the patriarch's flocks, with reservations exempt from state jurisdiction without the consent of the state legislature, with no warrant for the anomalous existence except perhaps an order from the war department and actual occupation for military purposes.

We know that in many cases throughout the west, such fort reserves have, with the progress of settlement, become unnecessary and been abandoned.

It is only in a comparatively few instances, where extensive and permanent government establishments were contemplated, that it has been deemed necessary or expedient to acquire jurisdiction to the exclusion of that of the state.

The judgment of the court below must stand affirmed.

All the justices concurring.