# Circuit Court of the United States

FOR THE

# DISTRICT OF KANSAS.

---

## MAY TERM, 1868.

---

### UNITED STATES AGT. GEORGE STAHL.

*Jurisdiction: Fort Harker: Courts.*

1. The right to punish for murder, or for any other offense committed within the limits of her territory, must belong to the state of Kansas, unless some rule of law constitutes special cases exceptions to that rule.

2. The *situs* of Fort Harker was not purchased by the United States, and no consent was ever given by the legislature of the state of Kansas to its use as a fort.

3. The government of the United States, when it admitted Kansas into the Union upon the same footing as the original states, retained the legal title to all the lands which she then owned in the state of Kansas, but parted with the sovereignty or jurisdiction for the general purposes of government over it, with certain reservations and exceptions.

4. The right to exercise jurisdiction over the crime of murder, having been vested in the state of Kansas by the act admitting her as a state, and she never having parted with that right, it can not belong to the United States.

5. The courts of the United States have no jurisdiction of the crime of murder committed upon the military reservation of Fort Harker, in the state of Kansas.

[Note.—See McCracken agt. Todd, 1 Kansas, 148; Clay agt. The State, 4 Kansas, 49; United States agt. Ward, *ante*, p. 199.]

## INDICTMENT for Murder.

*By the Court*—MILLER, J.

In this case defendant is indicted for murder, alleged to have been committed in the district of Kansas, at a place under the sole and exclusive jurisdiction of the United States of America, to-wit, at Fort Harker, on land occupied by the United States for a military post, and for other purposes connected therewith.

To this indictment the defendant pleads, denying the jurisdiction of the court, and alleging that Fort Harker was first established as a military post in the year 1863, under authority of the war department, and that no purchase of the land, on which it was established, had ever been made by the government of the United States, with the consent of the state of Kansas; nor had the consent of that state ever been given in any other mode to the exercise of an exclusive jurisdiction over the land included in said fort, by the federal government.

To this plea there is a demurrer, which we are now to decide.

The state of Kansas was admitted into the Union by an act of congress, approved January 29th, 1861, which declared that she was thereby placed on an " equal footing with the original states in all respects." This act, after describing the boundaries of the new state, excepts from its jurisdiction any territory which, by treaty with any Indian tribe, is not, without the consent of such tribe, to be included within the territorial limits or jurisdiction of any state or territory, and declares that it shall not be included within said state.

In the case of the United States agt. Ward, decided at the May term, A. D. 1863, this court held that the jurisdiction of the state over the crime of murder, was exclusive of that of the federal government in the state of Kansas, although the offense was committed on soil to which the Indian title had not been extinguished, unless it was soil occupied by one of the tribes which had treaties with the United States of the character above described. And in such territory the state had no jurisdiction, because it was no part of the state.

It is not claimed here that Fort Harker is located within the limits of any such tribe. But it is claimed that the fee of the soil being in the United States when the fort was established, by reason of that fact, and of the use and occupation of such soil as a fort by the federal government, the right to exercise jurisdiction in case of murder committed there, vests in the federal authorities.

It needs no argument to show that the right to punish for murder, or for any other offense committed within the limits of her territory, must belong to the state of Kansas, unless some rule of law constitutes special cases exceptions to that right.

In this case the exception is claimed to rest on that provision of the federal constitution which empowers congress to " exercise exclusive legislation, in all cases whatsoever, over such district (not exceeding ten miles square) as may, by cession of particular states, and the acceptance of congress, become the seat of government of the United States, and to exercise like

authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock yards and other needful buildings."

It is very obvious that the *situs* of Fort Harker does not come within the literal terms of this provision, for it was not purchased by the United States at all, and no consent was ever given by the legislature of Kansas to its use as a fort. As the United States was the owner of the land before it was determined to establish a fort on it, and before Kansas was organized into a territory, or admitted as a state, there was an impossibility to comply with the terms of the constitution, so far as the purchase was concerned. But as no purchase could be made, so none was necessary, because the only object of a purchase, namely, the acquisition of a title, was already an accomplished fact.

The government of the United States, when it admitted Kansas into the Union upon the same footing as the original states, retained the legal title to all the lands which she then owned in the state of Kansas, but she parted with the sovereignty or jurisdiction, for the general purposes of government over it, with certain reservations or exceptions.

These exceptions were, first, as to the lands of Indian tribes, which had treaties exempting them from state jurisdiction; and secondly, the right to tax the lands of the United States, and of the Indians. It was competent to the federal government, and it would have been appropriate, at that time, to have also excepted out of this grant of jurisdiction, places for forts,

14

arsenals, etc., if such had been the policy of congress.

But it was not done, and so far as the consent of Kansas to the exercise of the exclusive jurisdiction by congress is concerned, it stands on the same footing as the original thirteen states.

If, then, congress had purchased from a citizen of one of the original states, the fee-simple of a portion of its territory, for the purpose of erecting a fort, what kind of consent is necessary to be obtained from the state legislature, as provided in the constitution?

Whether, without the consent of the legislature, a fort could be erected and occupied, it is not necessary now to inquire. The language of the act is, that the *purchase for such a purpose* must be with the consent of that body. But whether the consent mentioned in the constitution had reference to the establishment and use of the place as a fort or not, it undoubtedly had especial reference to the grant of exclusive jurisdiction over the place thus selected and purchased. And it seems probable that this was the principal matter, as to which the consent of the state legislature was required by the constitution, for it is very much to be doubted whether the framers of the constitution, who conferred on congress such full powers of making war, raising armies, and suppressing insurrection, and also declared that the federal government was established for the express purpose of providing for the common defense, would have left the right of erecting forts, so important in the execution of these powers, to the volition of the state legislature. But as the all-important uses of a fort, arsenal, or magazine, could be

attained without the exercise of exclusive legislation within their walls, there was manifest propriety in refusing the assent of the state to the exercise of this important and delicate power, which, of right, belonged to the legislatures of the states, and which could only be needed or useful to the federal government in especial cases.

The right to exercise this jurisdiction having been vested in the state of Kansas by the act admitting her as a state, and she never having parted with that right, it can not belong to the United States. The right provided for in the constitution is an exclusive right of legislation. The act under which defendant is indicted applies, by its terms, to places alone in which the United States have the right of exclusive legislation; and the indictment describes the place as being within the exclusive jurisdiction of the federal government. The question of concurrent jurisdiction, therefore, does not, and can not arise in this case.

These views find support in the following adjudged cases: People agt. Godfrey, 17 Johns, 225; Commonwealth agt. Clay, 8 Mass., 75; United States agt. Bereau, 3 Wheaton, 388; Clay agt. State of Kansas, 4 Kas., 49; 1 McLean, 324; Story on the Constitution, §§ 1224–1227; 1 Kent, 482.

ORDER.—The demurrer to the defendant's plea to the jurisdiction is, therefore, overruled.