Painter v. Ives.

EDWARD PAINTER, PLAINTIFF IN ERROR, v. EZRA IVES, DEFENDANT IN ERROR.

1. **Jurisdiction of United States Courts in Nebraska.** The federal courts have no jurisdiction of the crime of larceny, alleged to have been committed on an Indian reservation in the state of Nebraska.

2. ———. All the territory embraced within the boundaries of the state, was withdrawn from the jurisdiction of the federal courts, by the act admitting the state into the Union.

3. **False Imprisonment:** MALICIOUS PROSECUTION: PLEADING: SUFFICIENCY OF PETITION. Although an action for malicious prosecution cannot be maintained, if the proceedings complained of were had by a court having no jurisdiction, yet a petition alleging that in consequence of such proceedings plaintiff was arrested, imprisoned, etc., is sufficient as a complaint for false imprisonment.

4. ———: EVIDENCE. In such an action, the information made by the defendant, upon which the warrant issued for the arrest of the plaintiff, is admissible in evidence.

5. ———: ———: INSTRUCTIONS TO JURY. There being evidence before the jury showing that plaintiff was arrested by a sheriff, at the request of the officer holding the warrant who had telegraphed him for that purpose, and imprisoned in jail until the arrival of such officer, the defendant asked the court to charge the jury, that "in estimating damages, in case the jury found for the plaintiff, they should not consider the fact of such imprisonment." *Held*, properly refused.

6. ———: DEFENSE. One who procures the arrest and imprisonment of another, upon void process, is liable in an action for false imprisonment, and mere good faith in making the affidavit, by virtue of which the arrest is made, is no defense.

THIS action was commenced in the district court of Washington county, on the seventeenth day of July, 1873, by Ezra Ives against Edward Painter. The petition alleged that on the tenth day of July, A. D., 1873, the said defendant, Painter, willfully and maliciously, and without probable cause, filed a complaint under affirmation with one William L. Peabody, a United

States commissioner for the district of Nebraska, which complaint was as follows:

UNITED STATES OF AMERICA, ⎱ ss.
    DISTRICT OF NEBRASKA. ⎰

The information and complaint of Edward Painter, U. S. Indian agent of Omaha tribe in said district, taken on his solemn affirmation before William L. Peabody, United States commissioner for the district of Nebraska, the 10th day of July, 1873, who upon his said affirmation says that he has just and reasonable grounds to suspect and believe that Ezra Ives, on or about the first day of January, 1872, at the Omaha reservation within the district of Nebraska aforesaid, and within the jurisdiction of the United States district court, for said district of Nebraska, did take, steal, and carry away one dark brown or black Indian pony, the property of " Nehatta " belonging to said Omaha tribe, and further saith not.

               E. PAINTER, *Indian Agent.*

Subscribed in my presence, and sworn to before me, at Omaha in said district, this 10th day of July, 1873.

               WM. L. PEABODY,
      *U. S. Com., for the Dist. of Nebraska.*

That by reason of the filing of said complaint and by the procurement of said defendant, the said William L. Peabody, a judicial officer of the United States of America issued a warrant for the arrest of the plaintiff, and placed the same in the hands of the United States marshal, who in obedience to said warrant, on the 14th day of July, 1873, arrested the plaintiff and incarcerated him in the county jail of Washington county, Nebraska, and on the 15th day of July, 1873, conveyed the plaintiff to the city of Omaha, where on the 16th day of

July, 1873, an examination into the truth of the charges contained in said information was had before the said United States commissioner, who thereupon discharged the plaintiff from custody, after he had been imprisoned for the space of forty-eight hours; that plaintiff had always borne a good reputation for honesty, and before the time first above stated, was never suspected of the crime of larceny; and that the defendant well knowing these facts, and contriving to injure the plaintiff, did without probable cause procure the arrest and incarceration of the plaintiff, to the damage of the plaintiff in the sum of ten thousand dollars.

The defendant answered that he did not maliciously and without probable cause, etc., make said complaint; that he did not falsely and maliciously cause the arrest of plaintiff; that there was probable and reasonable cause for making the complaint, etc.; that defendant asked the advice of counsel, etc.; and that he acted in good faith, etc.

Upon the trial of the cause, after the plaintiff had rested his case, the defendant moved for a non-suit on the ground that the evidence upon which the action was based, to-wit: the complaint made by the defendant, showed upon its face that the United States Commissioner had no jurisdiction of the crime charged, which motion the court overruled. The jury returned a verdict in favor of plaintiff for the sum of five hundred dollars, upon which judgment was entered. The defendant, Edward Painter, brought the cause here by petition in error. The evidence and instructions to the jury, passed upon here, are contained in the opinion.

*James Neville*, for plaintiff in error.

I.   The defendant in error should have made the allegations in his petition conform to the facts necessary to

be stated in a case of trespass under common law plead-
ing. No action for malicious prosecution can be sus-
tained upon a complaint where the court, before whom
the complaint was made, had no jurisdiction of the
offense charged therein. *Bixby v. Brandige,* 2 *Gray*, 129.
*Butler v. Potter,* 17 *Johns.,* 145. *Stone v. Crocker,* 24
*Pick.,* 87. *Parker v. Farley,* 10 *Cush.,* 279. *Sayles v.
Briggs,* 4 *Met.,* 421.

II. If the prosecution never legally existed, then it
cannot be malicious prosecution, but simply a trespass.
*Marshal v. Betner,* 17 *Ala.,* 832. 1 *Hilliard on Torts,*
415.

III. The rule is confined to cases where the proceed-
ings complained of are void. 1 *Hilliard on Torts,* 426.

IV. The plaintiff in error is not chargeable with the
unlawful acts of the officer in charge of the warrant.
*Johnston v. Sutton,* 1 *Term R.,* 544.

*Carrigan & Osborn,* for defendant in error.

I. The action is for trespass against the person, and
in our state is not governed by rules of the common law
respecting actions. The declaration is but a plain state-
ment of facts, and the gist of the action is the injury. It
then follows that if the defendant received an injury to
which the plaintiff contributed, the action can be main-
tained.

II. It may be urged, however, that the prosecution
must be ended before such action can be maintained, or
before the right of action accrues; but how can a prose-
cution end which has never been commenced before a
legally constituted tribunal? Admit this, yet the injury
is the same—the malice equally apparent. 2 *Greenleaf*

*on Evidence*, Sec. 449.   *Morris v. Scott*, 21 *Wend.*, 281.   *Humphrey v. Case*, 8 *Conn.*, 101.   *Stone v. Stevens*, 12 *Id.*, 219.   *Chambers v. Robinson*, 1 *Strange*, 691.

III.   It is not in *all cases* necessary to prove the termination of the prosecution.   *Sperly v. Warner*, 9 *Ohio*, 103.   *Fortman v. Rottier, et al.*, 8 *Ohio St.*, 548.

IV.   When a party applies for process which an officer has no power to issue, or fails to comply with the requirements of the law, in order to confer jurisdiction upon the officer to issue, there is some propriety in holding him as well as the officer liable.   *Hall v. Munger*, 5 *Lansing*, 100.

V.   All who aid, command, advise, or countenance the commission of a tort by another, or who approve of it after it is done, are liable, if done for their benefit, in the same manner as if they had done the tort with their own hands.   *Judson v. Cook*, 11 *Barb.*, 642.   *Brown v. Chadsay*, 39 *Barb.*, 253.

LAKE, CH. J.

One of the principal questions argued at the bar, and the one chiefly relied on for a reversal of the judgment of the court below, relates to the jurisdiction of the United States Commissioner over the offense with which Ives was charged.

It was urged on behalf of plaintiff in error, that an action for malicious prosecution cannot be maintained, where the proceedings complained of were had in a court having no jurisdiction of the subject matter of the suit. And this seems to be the correct rule when applied to an action for malicious prosecution, strictly speaking, where an injury to the plaintiff's character or reputation,

caused by the unauthorized proceedings, is the only wrong complained of.

In *Bixby v. Brandige*, 2 *Gray*, 129, it was directly decided, that the record of a prosecution and acquittal before a justice of the peace, who had no jurisdiction of the case, was not sufficient to maintain the action. *See also, Marshall v. Betner*, 17 *Ala.*, 832.

The commissioner, before whom the complaint of Painter was made, took cognizance of the alleged offense, on the supposition doubtless, that the jurisdiction belonged exclusively to the federal, and not to the state courts. In this however he erred. The fact that the crime was committed on an Indian reservation, is not, of itself, sufficient to give the federal tribunals jurisdiction thereof. *The United States v. Ward, Woolworth C. C. Rep.*, 17.

On the 19th day of April 1864, Congress passed "AN ACT to enable the people of Nebraska to form a constitution and state government, and for the admission of such state into the Union, on an equal footing with the original States." 13 *U. S. Statutes at Large*, 47. The second section of this act provided what the boundaries of the proposed state should be, and they embraced the reservation in question. This act further declared, in substance, that the state of Nebraska should consist of all the territory included therein, without any exception or restriction whatever. It is true that this proposition was not accepted within the time limited by the act, but when, in February 1866, our present constitution was framed with the view of asking Congress to admit us, reference was distinctly made thereto by section six of the schedule, as follows: "This constitution is formed, and the state of Nebraska asks to be admitted into the Union on an equal footing with the original states, on the condition and faith of the terms and propositions stated and specified in an act of Congress, Approved April 19,

1864, authorizing the people of the territory to form a constitution and state government, the people of Nebraska hereby accepting the conditions, in said act specified."

And, again, in the act of admission, we find, that special reference is made to said enabling act, and it is distinctly asserted, "that the said state of Nebraska shall be, and is hereby declared to be entitled to all the rights, privileges, grants and immunities," in said act contained, and "is hereby admitted into the Union on an equal footing with the original states, in all respects whatever." *General Statutes*, 72.

Now it is only within those particular places mentioned in the sixteenth subdivision of section eight, article one, of the federal constitution, that Congress can provide general police regulations for the government of the people. All other places are within the exclusive control of the state government, to whose legislation we must look for the punishment of all ordinary crimes and misdemeanors. From this it would seem clear that at the date of our admission into the Union, every portion of territory within the prescribed boundaries of the state, the Indian reservations included, became subject to its laws, and that for the punishment of all ordinary crimes, such as that under consideration, resort could alone be had to state laws, administered by the proper state courts. I conclude therefore that the commissioner assumed a jurisdiction which he did not in fact possess, and that all his acts were *coram non judice*, and merely void.

But while it is doubtless true, that these proceedings would not sustain an action for malicious prosecution, under the rule above recognized, still I think the petition states a good cause of action. In addition to all that would be required in that form of action, it is expressly alleged that in consequence of such prosecution, in fact,

in pursuance thereof Ives was arrested and thrown into jail, and put to great trouble and expense in procuring his release from said imprisonment.   Thus a clear case of false imprisonment is set out, for which the plaintiff in error was surely liable, for it was by his direct procurement that the illegal warrant, under which the defendant in error was arrested and imprisoned, was issued.   At the common law this would have sustained an action for trespass, this being the appropriate remedy for an arrest under a void process, or where the court had no jurisdiction of the subject matter of the suit, and the proceedings, therefore, were simply void.   This being so, it follows that the several rulings of the court below, as to the sufficiency of the petition, were entirely correct and must be sustained.

But it is further claimed that the court erred in the admission of certain testimony to the jury.   On this point the record shows, that the defendant in error offered in evidence the information made by Painter, on which the warrant for his arrest was issued, and under which he was incarcerated in jail.   The making of this complaint was a material averment, introduced for the purpose of showing the connection of plaintiff in error with the arrest which followed, and had it been denied, must have been proved as a part of Ives' case.   Not only is there no denial, however, on the part of Painter, that he made the affidavits, but he expressly admits it to be true, and asserts that he made it in the utmost good faith. While therefore this proof was wholly unnecessary, under the issues, it was not error to permit it to go to the jury. It could have done no possible harm.

The admission of the testimony of Rice Arnold, is also assigned for error.   This testimony related to the arrest and imprisonment of the plaintiff, and I can see no good reason why it should not have been given to the

9   .

jury.   But even if there were good reason for excluding it, no objection having been made, on the trial, to its admission, it is now too late to complain.

The court was requested, on behalf of the plaintiff in error, to instruct the jury, that in estimating damages, in case they found for Ives, they should not consider the fact of his imprisonment in jail at Blair.   The instruction was refused and an exception duly taken.   It was probably asked for in view of the testimony of the witness Arnold, who had sworn, in substance, that as sheriff of Washington county, he arrested the defendant in error and held him in custody, at the request of the deputy United States Marshal, to whom the warrant had been delivered for service, who had telegraphed to him for that purpose.   I think it is sufficiently plain from the record, that whatever was done by Arnold was the legitimate result of the suing out of the warrant by the plaintiff in error.   But even if the record were not entirely satisfactory on this point, inasmuch as it does not appear that all the evidence on this branch of the case has been preserved, the presumption is, that it was ample to warrant the instruction.

The court was further requested to charge that "it was the duty of the jury to find for the defendant if they believe he acted in good faith, and with an honest motive, in making the complaint."   This was very properly refused.   Mere good faith on the part of Painter, in making the affidavit by virtue of which Ives was wrongfully arrested and imprisoned, would constitute no defense in an action of this kind, for the injuries actually occasioned thereby.   *Lawrence v. Lanning*, 4 *Ind.*, 194. *Bacon v. Town*, 4 *Cush.*, 217.

Several other exceptions were taken to the judges charge, but they did not seem to be relied on by counsel, and we shall not notice them.   On the whole we think the law was laid down correctly, and seeing no rea-

son for disturbing the verdict, the judgment should be affirmed.

JUDGMENT AFFIRMED.

GANTT, J., concurred.    MAXWELL, J., did not sit.