JACKSON MARION, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Criminal Law:** CONSTRUCTION OF STATUTE. On the 20th day of April, 1883, the plaintiff in error was indicted for the crime of murder, alleged to have been committed on the 15th day of May, 1872, which was before the taking effect of the present criminal code. · *Held,* That he must be tried by the law in force at the time of the commission of the alleged offense.

2. **Ex Post Facto Law.** A law which makes an action done before its passage, which was innocent when done, criminal, and punishes such action, or that aggravates a crime or makes it greater than when it was committed, or which, in relation to that offense or its consequences alters the situation of the party to his disadvantage, or that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed, is an *ex post facto* law, and in so far as it affects the punishment of the party to his disadvantage is void.

3. ———. At the time of the commission of the alleged offense the punishment prescribed for the crime of murder was *either* death or imprisonment for life, the penalty to be fixed by the jury, in their verdict. After the commission of the offense the law ·was changed so as to make death the punishment for murder in the first degree, and divesting the jury of the authority to fix the penalty. *Held*, That so far as the law affected the rights of the party charged with the offense by depriving him of the right to the verdict of the jury upon the question of punishment it was *ex post facto* and void.

4. **Criminal Law:** PRISONER MUST BE TRIED UNDER LAW AS IT EXISTED AT TIME OF OFFENSE. Section 255 of the criminal code of 1873 saves to the state the power to prosecute and punish for crimes committed before its passage which were punishable under the law repealed by that code, and a party charged with the crime of murder, committed while the repealed law was in force, must be tried under the law as it was at the time of the commission of the offense.

5. **Jurisdiction of Crimes on Indian Reservation.** The courts of this state have jurisdiction and authority to try and punish parties for crimes committed on the Indian reservations within the state.

6. **Instructions.** When a jury has been once fully instructed upon a point of law it is not error for the court to refuse to repeat the instruction.

7. **Criminal Law:** REASONABLE DOUBT. The propriety of instructing a jury that in cases of circumstantial evidence it is not necessary for the jury to be satisfied beyond a reasonable doubt of " each link in the chain of circumstances relied on to establish defendant's guilt," doubted.

8. ———: EVIDENCE OF PRISONER. When in a prosecution for murder the defendant on his trial becomes a witness in his own behalf, it is incompetent on cross-examination, for the purpose of affecting his credibility as a witness, to ask him if he had not plead guilty to a penitentiary offense in another state; the entering of a plea of guilty without judgment or sentence not being a conviction within the meaning of section 338 of the civil code of Nebraska.

ERROR to the district court for Gage county. Tried below before DAVIDSON, J.

*Colby, Hazlett & Bates,* for plaintiff in error.

*R. W. Sabin, District Attorney,* and *Isaac Powers, Jr., Attorney General,* for the state.

REESE, J.

On the 20th day of April, 1883, the plaintiff in error was indicted by the grand jury of Gage county for the murder of John Cameron, on the 15th day of May, 1872. The trial on the indictment resulted in a verdict of guilty of murder in the first degree, and the sentence of death was pronounced upon the plaintiff in error by the court. From this judgment and sentence he prosecutes a writ of error to this court.

At the very threshold of this case we encounter a fatal error in the proceedings, and one which appears to have escaped the attention of the court and all the counsel engaged in the trial of the cause, but which must not be overlooked by this court. "No act which a court can be called on to perform is more grave and solemn than to render a capital judgment. To perform such a duty a judge is reconciled only by the consideration that it is not he who does it, but *the law,* of which he is simply the minister. But if the law invests him in the particular case with no such power, he may well deliberate and must refuse to exercise it." *United States v. Yellow Sun,* 1 Dillon's Circuit Court Reports, 273.

At the time of the alleged commission of the crime the law of Nebraska upon the subject of murder was quite different from what it is now and was at the time of the indictment and trial of plaintiff in error, and by that law he must be tried.

By section eighteen of the criminal code which was in force at the time of the alleged killing, murder is declared to be "the unlawful killing of a human being, with malice

aforethought, either express or implied." By that law there are no " degrees " of murder, the killing, if felonious, being either murder or manslaughter. By the law under which the plaintiff in error was tried, murder is divided into two degrees, murder in the first degree and murder in the second degree. By section three of the criminal code of 1873, murder in the first degree is in substance (as applicable to cases of this kind), the killing of another purposely, and of deliberate and premeditated malice; and murder in the second degree may be said to consist in killing another purposely and maliciously, but without deliberation and premeditation. Manslaughter may, for the purposes of this case, be treated as the same under both codes, although somewhat different.

In accordance with the requirements of the law under which the defendant was tried, the court gave to the jury this instruction: " 12. If you find the defendant guilty of the murder charged, then it will be your duty to also return in your verdict whether he is guilty of murder in the first degree—that is, purposely and of deliberate and premeditated malice; or whether he is guilty of murder in the second degree—that is, purposely and maliciously, but without deliberation and premeditation; or whether he is guilty of manslaughter—that is, that he unlawfully killed the deceased without malice." This, as we have seen, was an incorrect definition of the crime. But it was not only an incorrect definition of the crime of murder, but it withheld from the jury the duty of fixing the punishment or penalty to be inflicted upon the plaintiff in error. By section one of an act approved February 15th, 1869, which was amendatory of section 20 of the criminal code, page 595 of the Revised Statutes, it was provided that the punishment of any person or persons convicted of the crime of murder shall be death or imprisonment in the penitentiary for life, and the jury trying the case shall fix the penalty. In this case the plain-

tiff in error was deprived of a right guaranteed to him not only by the constitution and laws of this state, but by the constitution of the United States.

It is one of the fundamental principles of this government that no person shall be punished for an act which was not criminal at the time the act was committed, nor for an act which is made criminal in any other or greater degree, or the punishment of which is materially changed after the commission of the act; and so carefully have the rights of the citizen been guarded in this respect, it has been incorporated in the organic law of the nation, and by section ten of article one of the constitution of the United States, the states are prohibited from passing any *ex post facto* law. It cannot be doubted but that the law relating to the crime of murder which became the law of this state on the first day of September, 1873, was, so far as it related to acts done before it took effect, *ex post facto*, and unless some provision was made for cases of this kind no punishment could be inflicted for such acts. In *Calder v. Bull*, 3 Dall., 386, the supreme court of the United States have decided that the plain and obvious meaning and intention of this prohibition in the constitution is, that the legislatures of the several states shall not pass laws after a fact done by a citizen or subject which shall have relation to such fact; and in writing the opinion of the court in that case Chase, J., says: " I will state what laws I consider *ex post facto* laws, within the words and the intent of the prohibition: 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action. 2d. Every law that aggravates a crime or makes it greater than it was when committed. 3d. Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed. 4th. Every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the

time of the commission of the offense in order to convict the offender. All these and similar laws are manifestly unjust and oppressive." This construction of the consti- tutional provision under consideration has been accepted and followed by the courts ever since the decision was made, and is now the settled law of the land; and hence it would seem that little need be said by way of applying the principles there laid down to this case. It is very evident that the law under which the plaintiff in error was tried "inflicts a greater punishment than the law annexed to the crime when committed." By that law the punish- ment was *either* death or imprisonment. By the later enactment it is death. By that law the party charged had the right to have the jury pass upon the question as to whether he should live or die. By the later act, if found guilty, he is deprived of his life, and the jury by whom he is tried have nothing to say upon the subject of what his punishment shall be. This right being his at the time of the alleged act, he cannot be deprived of it by a law subsequently passed.

In *Kring v. The State,* 16 Central Law Journal, p. 308, the supreme court of the United States has recently held that (quoting from the syllabus): "Any law is an *ex post facto* law, within the meaning of the constitution, passed after the commission of a crime charged against a defend- ant, which, in relation to that offense or its consequences, alters the situation of the party to his disadvantage; and no one can be criminally punished in this country except according to the law prescribed for his government by the sovereign authority before the imputed offense was com- mitted, and which existed as a law at the time." In that case, at the time of the commission of the murder for which Kring was indicted, the supreme court of Missouri had declared the law to be that when a conviction was had of murder in the second degree on an indictment charging murder in the first degree, if the conviction was set aside

the defendant could not again be tried for murder in the first degree. After the commission of the crime the constitution of the state was so amended as to abrogate this rule and allow a defendant to be again put upon his trial for the highest crime charged in the indictment. After the change in the constitution, Kring, having been put on his trial for murder, made an agreement with the prosecuting attorney by which he was to plead guilty of murder in the second degree and receive a sentence of ten years' imprisonment in the penitentiary of the state. He entered his plea of guilty of murder in the second degree, but the court refused to be bound by the agreement of the prosecuting attorney, and sentenced Kring to the penitentiary for a term of twenty-five years. The case was taken to the supreme court of the state, and the sentence was set aside and a new trial granted. When again brought to trial he insisted on his agreement with the prosecutor, but the court still refused to be bound by it. He refused to withdraw his plea of guilty, but the court set it aside and entered a plea of not guilty. A trial was had and he was found guilty of murder in the first degree, and sentenced to be hung. He appealed to the supreme court of the state and the judgment of the lower court was affirmed, when he appealed to the supreme court of the United States where the judgment was set aside, that court holding that as at the time of the commission of the offense a judgment of guilty of murder in the second degree was a final acquittal of the crime of murder in the first degree, so it must continue to be so far as that crime was concerned. In the opinion of the court Miller, J., says: "We are of opinion that any law passed after the commission of an offense which, in the language of Washington in *United States v. Hall,* 'in relation to that offense or its consequences, alters the situation of the party to his disadvantage' is an *ex post facto* law; and in the language of Denio, in *Hartung v. The People,* 'No one can be crimi-

nally punished in this country, except according to a law prescribed for his government by the sovereign authority before the imputed offense was committed, and which existed as a law at the time.' Tested by these *criteria* the provision of the constitution of Missouri which denies to plaintiff in error the benefit which the previous law gave him, of acquittal of the charge of murder in the first degree on conviction of murder in the second degree, is as to his case an *ex post facto* law, within the meaning of the constitution of the United States, and for the error of the supreme court of Missouri in holding otherwise its judgment is reversed and the case is remanded to it, with direction to reverse the judgment of the criminal court of St. Louis, and for such further proceedings as are not inconsistent with this opinion."

We have quoted from the above case at considerable length for the double purpose of drawing therefrom; as well as might be, the legal principles there stated and to show that any other doctrine applied by the courts of the states will be reviewed by that court and their judgments promptly reversed, so that were this court inclined to hold otherwise such a judgment would not be permitted to stand.

It is not deemed necessary to discuss this subject further in this opinion, as it seems to us to be so well settled by the adjudications of all the courts of this country that the simple statement of the proposition is sufficient. It is evident that it was an oversight of the court and counsel involved in the trial. We cite a portion of the cases to be found in the books where the foregoing views are sustained. *State v. McDonald*, 20 Minn., 136. *Same v. Johnson*, 12 Id., 378. *Same v. Gut*, 13 Id., 315. *Same v. Ryan*, Id., 343. *Same v. Herzog*, 25 Id., 490. *Com. v. McDonough*, 13 Allen (Mass.), 581. *Hartung v. The People*, 22 N. Y., 95. *Shepherd v. The People*, 25 Id., 406. *Green v. Shumway*, 39 Id., 418. *In re Petty*, 22 Kansas, 477. *State v. Sneed*, 25 Texas (supplement), 66. *Miles v. The*

*State,* 40 Ala., 39.   See also 1st Bishop's Criminal Law, §
129 (108).   2 Story on The Constitution, 213.

Notwithstanding the fact that this case must be reversed
for the foregoing reasons, it does not follow that the plain-
tiff in error cannot be tried for the crime alleged against
him.    Ample provision is made by the criminal law which
took effect September 1st, 1873, for the trial of persons
charged with the commission of crimes which were made
punishable by the law thereby repealed.   Section 255 of
the repealing act (see page 706, Comp. Statutes) is as fol-
lows:   "No offense committed and no fine, forfeiture, or
penalty incurred under existing laws previous to the taking
effect of this code, shall be affected by the repeal herein of
any such existing laws, but the punishment of said offenses,
the recovery of such fines and forfeitures shall take place
as if said laws repealed had remained in force; *Provided,*
That the manner of procedure for the enforcement or im-
position of all such punishments and the collection of all
such fines and forfeitures shall be in accordance or as nearly
in accordance with the provisions of this code as the nature
of the case will admit; and in any case whatsoever should
the procedure provided for in this code be wholly inade-
quate, the procedure provided for in the laws repealed by
this code may be followed so far as necessary to prevent a
failure of justice."   By this section all difficulty is re-
moved, and it only remains to put the plaintiff in error
upon trial for the crime with which he is charged in the
manner provided by the law as it existed at the time of the
alleged commission of the offense.

As another trial will have to be had, it is deemed expe-
dient to notice briefly some of the alleged errors presented
by the plaintiff in error in his brief, as some of the ques-
tions here presented will in all probability have to be met
in the trial court.

The first question presented for decision by the defend-
ant in error is, that " the evidence shows that the alleged

crime for which defendant was convicted was committed, if at all, upon a tract of land set apart for the sole and exclusive use of the Otoe and Missouri tribe of Indians under the laws of congress and treaties between the said Indian tribes and the United States, and the district court of Gage county had no jurisdiction over the said offense." This territory, known as the Otoe reservation, being within the boundaries of this state, is subject to its laws, and it is not deemed necessary here to discuss at any great length the legal proposition presented by the plaintiff in error, as it has been heretofore settled, not only by this court but the courts of various states as well as the federal courts. See *Painter v. Ives*, 4 Neb., 122. *Clay v. The State*, 4 Kan., 58. *McCracken v. Todd*, 1 Id., 148. *United States v. Yellow Sun, supra*. *United States v. Ward*, 1 Woolworth C. C. Rep., 17. *Same v. Stahl*, Id., 192.

We think the district court had jurisdiction, and that plaintiff in error was properly put upon his trial in Gage county.

The plaintiff in error requested the court to give a number of instructions to the jury, some of which were refused, and to the refusal of the court to give those he excepted, and now assigns the refusal as error. The eleventh instruction, which reads as follows, was refused: "11. The court instructs the jury that it is an invariable rule of law that to warrant a conviction for a criminal offense upon circumstantial evidence alone, such a state of facts and circumstances must be shown as that they are all consistent with the guilt of the party charged, and such that they cannot upon any reasonable theory be true and the party charged be innocent." This instruction states the law correctly and should have been given had not the jury been already fully instructed upon this point. When a jury has been once instructed upon a point of law nothing can be gained by repeating the instruction. One instruction, full and clear, upon a given point is sufficient. *Olive v. The*

*State,* 11 Neb., 30.   *Kopplekom v. Huffman,* 12 Neb., 100.

The court also refused to give instruction No. 13 asked by plaintiff in error, which was, that " the confessions and admissions of the prisoner out of court are a doubtful species of evidence, and should be acted upon by the jury with great caution."   As an abstract proposition of law this instruction is correct, but we fail to find anything in this case to which it may apply, and our attention has not been called ·to any evidence of confessions or admissions. Instructions should be applicable to the case made.   *Williams v. The State,* 6 Neb., 340.   The same may be said of the fourteenth instruction asked by the plaintiff in error and refused by the court.

The next instruction which it is thought necessary to notice is the fifth instruction asked by the State and given by the court, which is as follows:

"The court further instructs the jury that the rule requiring the jury to be satisfied of the defendant's guilt beyond a reasonable doubt in order to warrant a conviction, does not require that the jury should be satisfied beyond a reasonable doubt of each link in the chain of circumstances relied upon to establish the defendant's guilt.   It is sufficient if, taking the testimony altogether, the jury are satisfied beyond a reasonable doubt that the State has proved each material fact charged, and that the defendant is guilty."   The objection to this instruction is based upon that part which informs the jury that the law does not require that they should be satisfied ·beyond a reasonable doubt of *each link* in the chain of circumstances relied upon to establish the defendant's guilt.

This instruction is copied from Sackett on Instructions to Juries, and is sustained by some authorities of respectability, but yet it seems to us that a jury *might* be misled thereby.   What is meant by the word "link" as used therein?   If the jury were given to understand that it referred only to evidentiary facts which might add force or

weight to other facts from which the inference of guilt could be drawn, then the instruction might be said to be correct.    But if by the use of the word is meant such criminative facts which of themselves form the chain of evidence from which the inference of guilt is to be drawn, then the instruction does not state the law correctly.    No chain can be stronger than its weakest link.    If the link is gone it is no longer a chain.    If the word "link" here refers to those circumstances which are *essential to the conclusion*, it is not a correct statement of the law.    While in view of other instructions which were given, and which more definitely stated the law, a new trial might not for this reason alone be given, yet we cannot recommend this instruction, as worded, and think it should not be thus given.

There are over five hundred objections, to evidence, presented by the motion for a new trial and petition in error, many of which seem to have been made more from habit, and out of abundant caution, than from anything contained in the questions to which the objections were made.    With the exceptions of those hereafter particularly noticed, we will dismiss them all by saying that, while our attention has not been particularly called to any, we have examined them all and fail to detect any error.    But our attention is particularly called to question No. 3116, which was in the cross-examination of the plaintiff in error while upon the witness stand.    The question is as follows:    "I will ask you this.    Did you plead guilty to a penitentiary offense down there in Kansas just before the sheriff brought you up here?"    This question was objected to by plaintiff in error, his objection overruled, exception taken, and he was compelled to answer, which he did by answering "Yes."    In support of the right of the state to ask this question and insist upon an answer, we are cited to section 338 of the civil code, which is as follows:    "A witness may be interrogated as to his previous conviction for a felony. But no other proof of such conviction is competent except

the record thereof." There is nothing in this case which lays any foundation for such proof whereby it becomes material to the issue. If competent at all it is for the purpose of discrediting the testimony of the witness and thereby destroying its weight with the jury. At common law, one who had been convicted of an infamous offense was not a competent witness in any case, but the record of that conviction was the only competent proof thereof. This disqualification has been removed by our statute, and a convict is a competent witness, but it is provided that, "facts which have heretofore caused the exclusion of testimony may still · be shown for the purpose of lessening its credibility." § 330, civil code. If pleading guilty to a charge of a felony can be said. to be a " conviction," then the ·question was proper. But if in order to be a conviction there must be a judgment of the court upon the plea, then the question was improper. There is a conflict of opinions and decisions upon this question, and by some text writers and courts of last resort it is maintained that the word "conviction" usually means the judicial ascertainment of guilt; as by the verdict of a jury or a plea of guilty. But we have found no case where the word as applied to the competency of a witness to testify has reference to anything short of the final judgment of the court upon a verdict or plea of guilty.

In *Commonwealth v. Gorham*, 99 Mass., 420, this question under somewhat similar circumstances was passed upon by the supreme court of that state. There the defendant was indicted for burning a dwelling-house. On the trial he testified in his own behalf; and to affect his credibility as a witness the prosecuting attorney offered in evidence an original indictment for forgery found against him at a previous term of the same court; and the record of the clerk noted on the back thereof that "the defendant pleads guilty," after which plea that indictment was put on file, but afterwards brought forward, entered on the docket, and was pending at the time of the trial under the

indictment for burning.   The evidence was admitted over the objection of the defendant, who was found guilty, and alleged exceptions.   In the supreme court the attorney general presented an exhaustive argument seeking to show that the term " conviction," as used with reference to witnesses, did not necessarily imply the judgment of the court upon a verdict or plea of guilty, but that it was used in the sense of the establishment of guilt, and many authorities were cited by him, most of which were upon the word as generally used with reference to the proceedings of courts.   But the supreme court held otherwise.   In the opinion of the court, written by Colt, J., the following language is used:   "We think the obvious purpose of the legislature was to restore the competency of a witness against whom the record of a judgment for crime was produced, but to permit the same evidence to be used as affecting his credibility (in all cases requiring the same complete record of the whole case), and that the word " conviction" is here used in the broader and less technical sense, and implies the judgment of the court.   It could not have been the purpose of the law makers to permit evidence of moral guilt as distinguished from guilt legally established to be produced against the witness."   The exceptions were sustained.

We think the rule adopted in that case was the correct one, and that in order to render the evidence proper, for the purpose sought, there must be a judgment of conviction.

It follows that the question was improper, and the objection should have been sustained.

The judgment of the district court is vacated, the decision on the motion for a new trial is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.