THE COUNTY OF CHERRY v. J. M. THACHER.

[FILED JULY 1, 1891.]

Taxation: GOVERNMENT POST TRADER NOT EXEMPT. A post
trader at a military reservation, under the act of congress ap-
proved July 20, 1870, appointed for the accommodation of emi-
grants, freighters, or other citizens, and under the protection
and control of the war department as a camp follower, is not
exempt from assessment for taxation by the county or state au-
thority having concurrent jurisdiction.

ERROR to the district court for Cherry county. Tried
below before KINKAID, J.

*J. Wesley Tucker*, and *O. P. Mason*, for plaintiff in er-
ror, cited cases referred to in opinion.

*Cowin & McHugh, contra*, cited : *Fort Leavenworth R.
Co. v. Lowe*, 114 U. S., 525; *U. S. v. Cornell*, 2 Mason
[U. S.], 60; *Commonwealth v. Clary*, 8 Mass., 72; *Mitch-
ell v. Tibbetts*, 17 Pick. [Mass.], 298; 2 Story, Const., sec.
1225; 1 Kent Com., 429; *Sinks v. Reese*, 19 O. St., 306;
1 Desty, Taxation, 55; 6 Op. Att'y Genls., 577.

Cobb, Ch. J.

The defendant in error, Justice M. Thacher, is a post trader appointed by the secretary of war under an act of congress approved July 15, 1870, at the military post of Fort Niobrara, in Cherry county, situate on a military reservation of ten miles square established by and in continuous use of the government of the United States.

In 1887 the legislature of this state passed the following act:

"An act ceding jurisdiction to the United States over the military reservations known as Fort Niobrara and Fort Robinson.

"*Be it enacted by the Legislature of the State of Nebraska:*

"Section 1. That the jurisdiction of the state of Nebraska in and over the military reservations known as Fort Niobrara and Fort Robinson be and the same is hereby ceded to the United States: *Provided,* That the jurisdiction hereby ceded shall continue no longer than the United States shall own and occupy said military reservations.

"Sec. 2. The said jurisdiction is ceded upon the express condition that the state of Nebraska shall retain concurrent jurisdiction with the United States in and over the said military reservations, so far as that all civil process in all cases, and such criminal and other process as may issue under the laws or authority of the state of Nebraska, against any person or persons charged with crimes or misdemeanors committed within said state, may be executed therein in the same way and manner as if such jurisdiction had not been ceded, except so far as such process may affect the real and personal property of the United States; *Provided,* That nothing in the foregoing act shall be construed so as to prevent the opening and keeping in repair public roads and highways across and over said reservations.

"Sec. 3. Whereas an emergency exists, this act shall take effect and be in force from and after its passage.

"Approved March 29, 1887."

After the approval of this act the county of Cherry, by its assessors, provided for the assessment of the stock of goods and property of the defendant in error used in his trading establishment at said fort, and wholly within said reservation, without any return by him, estimating its value at $5,491, and taxing it for county purposes at $129.56, and threatened to collect the tax by distress warrant.

The defendant applied for a temporary injunction against the county and its treasurer, which was granted by the district court. To this proceeding there was a general demurrer, which was overruled on hearing and judgment entered for the post trader.

The question presented is, was the property and tradership of the defendant in error located and confined exclusively within the reservation and military post of Fort Niobrara, subject to taxation by the county of Cherry or the state of Nebraska?

The second section of the act cited expressly reserves concurrent jurisdiction with the United States in and over the military reservation for all civil process in all cases, and such other criminal or other process as may issue under the laws or authority of this state against any person charged with crime or misdemeanors committed in this state, and may be executed as if such jurisdiction had not been ceded, except so far as such process may affect the real or personal property of the United States. It is not apparent that this proceeding affects the real or personal property of the United States. By the act of congress, approved July 20, 1870, "the secretary of war is authorized to permit one or more trading establishments to be maintained at any military post on the frontier not in the vicinity of city or town, when he believes such an estab-

lishment is needed for the accommodation of emigrants, freighters, or other citizens. The persons to maintain such establishments shall be appointed by him, and shall be under protection and control as camp-followers." (Army Regulations [1881], sec. 1113.) The defendant in error is appointed for the accommodation of emigrants, freighters, or other citizens, by the secretary of war, and is under the protection and control of the post commander as a camp-follower only. In his appointment as trader, at his post on the military reservation, or in his privileges for the accommodation of emigrants, freighters, or other citizens, there appears to be no public or private motive contemplated by the general government exempting him from assessment for taxes, and from the common duties and exactions of other citizens. The laws of the state, both civil and criminal, were in force over the reservation in which his tradership was exercised.

In *Painter v. Ives*, 4 Neb., 122, it was held, in 1875, "that the federal courts have no jurisdiction of the crime of larceny alleged to have been committed on an Indian reservation in this state. All territory within the boundaries of the state was withdrawn from the jurisdiction of the federal courts by the act admitting the state into the Union." (*Clay v. State*, 4 Kan., 58; *McCracken v. Todd*, 1 Id., 148; *U. S. v. Ward*, 1 Woolworth, C. C. [U. S.], 17; *U. S. v. Stahl*, Id., 192.)

The state having the exclusive power of legislation over the reservation on which the property is assessed and listed for taxes, has exclusive jurisdiction. (*U. S. v. Bevans*, 3 Wheaton, [U. S.], 388; *Sturgis v. Crowninshield*, 4 Id., 192.)

The courts of this state have hitherto exercised jurisdiction over this reservation, and will necessarily retain the same until congress exercises its power by extending to the federal court its power to entertain jurisdiction; that of the state courts can only be superseded by congressional

25

legislation, and we do not find that any such attempt has been made. (3 Wheaton, 336; 4 Id., 184.)

The complete jurisdiction for the purposes of listing goods and stock in trade for assessment and taxation, does not seem to have been parted with by the act of the legislature cited, and unless the fact is widely different, and we have fallen into gross error as to the jurisdiction and sovereignty of the officers of Cherry county and of the state, it follows that the defendant in error has not stated a case, nor offered a complaint entitling him to relief.

The judgment of the district court is reversed, the injunction against the plaintiffs in error in that court is dissolved, and the petition of the defendant in error is dismissed with judgment against him for costs of suit.

JUDGMENT ACCORDINGLY.

THE other judges concur.